## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SARA PICARD,

                Plaintiff,

      v.

PHOENIX ADMINISTRATORS, LLC,

                Defendant.

CIVIL ACTION NO. 3:24-CV-01940

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court is a motion for a preliminary injunction filed by Plaintiff Sara Picard ("Picard") seeking to enjoin Defendant Phoenix Administrators, LLC d/b/a Performance Health ("Performance") from joining her into arbitration proceedings against Performance initiated by North Pocono School District ("NPSD"). (Doc. 3; Doc. 3-1). This action was initiated by the filing of a complaint on November 12, 2024. (Doc. 1). For the following reasons, Picard's motion for a preliminary injunction will be **GRANTED**. (Doc. 3).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The following factual background is taken from the complaint, declarations the parties submitted to the Court, exhibits presented at a September 8, 2025, hearing on Picard's motion, and testimony from the September 8, 2025, hearing. (Doc. 1; Doc. 19-1; Doc. 23-1; Doc. 23-2; Doc. 28; Doc. 28-1; Doc. 28-2). Picard is the president of and a managing partner at Millenium Administrators, Inc. ("Millenium"), formerly known as Millenium Healthcare Group, Inc., a healthcare brokerage firm and healthcare administrator which advises employers regarding health care plans. (Doc. 1, ¶¶ 9-10; Doc. 19-1, ¶¶ 4-6). Performance is a third-party healthcare administrator. (Doc. 1, ¶¶ 10-11 Doc. 23-1, ¶ 3).

Between July 2013 and June 2024, Millennium was a broker for NPSD and advised NPSD on healthcare plans. (Doc. 1, ¶ 9; Doc. 19-1, ¶ 4; Doc. 23-2, ¶ 3). Between 2018 and 2019, Picard, on behalf of Millenium, introduced Performance to NPSD as a possible candidate for NPSD's third party healthcare administrator. (Doc. 1, ¶ 10; Doc. 23, 1 ¶ 3). Picard also helped NPSD vet other candidates to be NPSD's third party administrator. (Doc. 1, ¶ 10; Doc. 19-1, ¶ 10). Neither Picard nor Millennium had a role in NPSD's selection process for choosing a third-party healthcare administrator. (Doc. 1, ¶ 10; Doc. 19-1, ¶ 14). NPSD ultimately chose Performance to be its third-party healthcare administrator. (Doc. 1, ¶ 11). NPSD and Performance independently negotiated and entered into an Administrative Service Agreement ("ASA") in or around November of 2019, which was renewed in 2020, 2021, and 2022. (Doc. 1, ¶ 11; Doc. 28). Neither Picard nor Millennium were a party to the ASA or any of its renewals, nor did Picard or Millennium Administrators participate in negotiating and/or drafting the ASA or any of its renewals. (Doc. 1, ¶ 12; Doc. 19-1, ¶ 14).

In 2020, Performance, Picard, and Millenium#25, LLC ("Millenium#25"), a separate business from Millenium which Picard founded, entered into a referral agreement which allowed Millenium#25 and Picard to receive referral fees from Performance. (Doc. 19-1, ¶¶ 17-21; Doc. 23-1. ¶¶ 4-5; 28-1). Under this agreement, Picard and Millenium#25 received a percentage of the payments NPSD paid Performance. (Doc. 19-1, ¶ 25; Doc. 23-1. ¶¶ 4-5).

In 2022, NPSD discovered Performance substantially overbilled NPSD through December 2022. (Doc. 1, ¶¶ 13-14; Doc. 19-1, ¶¶ 22-24; Doc. 23-2 ¶ 11). Performance and NPSD subsequently entered into a settlement agreement. (Doc. 1, ¶ 15; Doc. 23-2). Picard is not a party to the settlement agreement. (Doc. 1, ¶ 16; Doc. 23-2). Millennium and Millennium #25 are also not a party to the settlement agreement. (Doc. 1, ¶ 16; Doc. 28-2).

Picard, Millennium, and Millenium#25 played a role in negotiating or drafting the settlement agreement. (Doc. 1, ¶ 16; Doc. 19-1, ¶¶ 33-35; Doc. 23-2, ¶ 24). Relevant here, the settlement agreement contains an arbitration clause directing arbitration by the American Arbitration Association ("AAA") for any claim or dispute between NPSD and Performance. (Doc. 1, ¶ 19; Doc. 28-2, at 4-5). On February 8, 2024, NPSD submitted a Demand for Arbitration with the AAA against Performance. (Doc. 1, ¶ 22; Doc. 1-3). An arbitration matter was subsequently commenced by the AAA. (Doc. 1, ¶ 25; Doc. 1-4). On July 10, 2024, Performance filed a motion before the AAA seeking to join Performance and Millennium as third-party respondents in the NPSD Arbitration. (Doc. 1, ¶ 29; Doc. 19-1, ¶ 48). Therein, Performance alleged that "[Picard] and Millennium Administrators are responsible for the unreimbursed amount [Performance] owes to NPSD and sought to assert claims against [Picard] and Millennium Administrators for indemnification, contribution, and unjust enrichment" and demands $670,000 in damages. (Doc. 1, ¶ 30; Doc. 1-4). Picard argued before the arbitrator that she was not subject to the arbitration agreement because she was not party to the settlement agreement, but the arbitrator ruled that Picard could be subject to arbitration because Picard benefited from the settlement agreement. (Doc. 1-4). Picard thus instituted this action to prevent the arbitrator from compelling her to join the arbitration. (Doc. 1).

Picard filed her complaint on November 12, 2024, along with the instant motion for a preliminary injunction. (Doc. 1; Doc. 3). On November 13, 2024, Picard filed a brief in support of her motion for a preliminary injunction. (Doc. 4). On December 30, 2024, Performance filed a brief in opposition to Picard's motion for a preliminary injunction. (Doc. 11). On January 10, 2025, Picard filed a reply brief. (Doc. 12).

After a telephonic conference call to address issues arising from the instant motion, at the request of the parties, this Court ordered limited discovery, after which the parties were directed to file an agreed-upon stipulation to relevant facts. (Doc. 15). However, after several months, the parties were unable to agree to a joint stipulation. (Doc. 15; Doc. 16; Doc. 17; Doc. 18; Doc. 22). The parties filed sworn declarations and additional Court-ordered briefing. (Doc. 19-1; Doc. 23-1; Doc. 23-2; Doc. 24; Doc. 25). This Court held a hearing on September 8, 2025,[1] where Picard submitted three exhibits and testified on her own behalf, and Performance called Todd Howard ("Howard"), President of Performance, and Dr. Daniel J. Powell ("Powell"), Superintendent of NPSD, as witnesses. (Doc. 28; Doc. 28-1; Doc. 28-2). Having heard arguments and considered the relevant evidence, Picard's motion is ripe for disposition.

## II.  LEGAL STANDARD

### A.  PRELIMINARY INJUNCTION STANDARD

Four factors govern a district court's decision in issuing a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *Grill v. Aversa*, 908 F. Supp. 2d 573, 591 (M.D. Pa. 2012); *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994); *SI Handling Systems, Inc. v.*

---

[1] Although the parties stated during telephonic status conferences that a hearing would not be necessary, Performance later requested a hearing, and the Court determined a hearing was necessary from the parties' briefing and declarations. (Doc. 26).

*Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)); *see also Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 170–71 (3d Cir. 2001).

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Such relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). In order to satisfy this exacting standard, the party moving for a preliminary injunction must carry its burden of demonstrating both: (1) likelihood of success on the merits; and (2) the existence of irreparable injury from the alleged misconduct. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989). If the movant fails to carry this burden on these two elements, the motion should be denied since a party seeking such relief must "demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.1989) (emphasis in original) (*quoting Morton v. Beyer*, 822 F.2d 364 (3d Cir.1987)). Further, given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.

As a threshold matter, it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir.1992) (emphasis in original, citations omitted). Therefore, "upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir.1937).

A preliminary injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel.*

*Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat . . . .'" *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). "A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis in original). Thus, the relevant inquiry is whether the party moving for injunctive relief is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued.

Moreover, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'" *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). If the record does not support a finding of both irreparable injury and a likelihood of success on the merits, then a preliminary injunction cannot be granted. *Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987).

B. Permanent Injunction Standard

To obtain a permanent injunction, a movant must demonstrate (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *ebay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010); *Quinn v. Tritt*, No. 3:18-CV-00632, 2019 WL 517631 (M.D. Pa. Jan. 7, 2019), *report and recommendation adopted*, No. CV 3:18-632, 2019 WL 365741 (M.D. Pa. Jan. 30, 2019). Notably, there is no significant difference between the standards for a preliminary injunction and a permanent injunction. *Brandt v. Burwell*, 43 F. Supp. 3d 462, 483 (W.D. Pa. 2014) (citing *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")). The moving party bears the burden of satisfying these factors. *Bell*, 238 F. Supp. 2d at 699. A plaintiff must be entitled to final judgment on the merits to be entitled to a permanent injunction. *See Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 850 (3d Cir. 1984); *see also Nittany Outdoor Advert., LLC v. Coll. Twp.*, 22 F. Supp. 3d 392, 397 (M.D. Pa. 2014).

III. Discussion

A. Picard's request for a Preliminary Inunction

The Court begins its analysis by assessing whether a preliminary injunction is warranted. "Preliminary injunctions are reserved for 'extraordinary situations[,]' and present

numerous concerns, including the nature of proceedings, the granting of a remedy based upon a prediction of the law, and the prejudging of the merits of a case." *Deleman v. HighLevel, Inc.*, No. 3:25-CV-01284, 2025 WL 2101965, at *7 (M.D. Pa. July 25, 2025) (quoting *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dept. of Safety & Homeland Sec.*, 108 F.4th 194, 198-200 (3d Cir. 2024)). "To obtain a preliminary injunction, [a plaintiff must] persuade the District Court that '(1) he is likely to succeed on the merits, (2) he will suffer irreparable harm without preliminary relief, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest.'" *Norton v. Adams*, No. 25-2361, 2025 WL 2231797, at *3 (3d Cir. Aug. 1, 2025) (quoting *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 218 (3d Cir. 2025)). The Court will address each of these factors in turn.

### 1. LIKELIHOOD OF SUCCESS ON THE MERITS

Picard argues that she is likely to succeed on the merits for her claim that she cannot be compelled into arbitration because she is not party to any agreement containing an arbitration clause. (Doc. 4, at 9). Picard asserts that "there is no question that [she] did not sign the Settlement Agreement, and that there exists no other agreement between [Picard] and [Performance] (or [Picard] and NPSD) to arbitrate any dispute," and thus "this Court should enjoin [Performance] from attempting to join [Picard] into the NPSD Arbitration or any other arbitration proceeding." (Doc. 4, at 10). Picard further avers that no equitable doctrines compel her to join the arbitration between Performance and NPSD because there is no evidence she embraced the settlement agreement, directly benefited from the settlement agreement, or was aware of the terms of the settlement agreement. (Doc. 4, at 11-16). Performance avers that the arbitrator correctly required Picard to join the arbitration between NPSD and Performance through the theory of equitable estoppel because she directly

benefited from the settlement agreement.[2] (Doc. 11, at 8-11). According to Performance, Picard is liable for some of the money Performance is required to pay NPSD under the settlement agreement, and Picard benefits from the settlement agreement because under that agreement, she avoids liability. (Doc. 11, at 11; Doc. 25, at 5-7).

"Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001). "[W]hen asked to enforce an arbitration agreement against a non-signatory to an arbitration clause, [courts] ask 'whether [the non-signatory] is bound by that agreement under traditional principles of contract and agency law.'" *E.I. DuPont de Nemours & Co.*, S.A.S., 269 F.3d at 194–95 (quoting *Bel-Ray Co.*, 181 F.3d at 444). "Generally, the common law theories used to bind a non-signatory to an arbitration clause include third party beneficiary, agency and equitable estoppel." *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004). A non-signatory to an agreement containing an arbitration clause may be compelled into arbitration under the agreement "when [the non-signatory] embraces the agreement and *directly* benefits from it." *Bouriez*, 359 F.3d at 295 (emphasis added); *see also Bouriez*, 359 F.3d at 294; *see also E.I. DuPont de Nemours & Co.*, 269 F.3d at 200 (refraining from compelling a non-signatory into arbitration because "there is no

---

[2] Performance avers that Picard can be compelled into arbitration under an agency theory, a veil piercing/alter ego theory, and an estoppel theory. (Doc. 11, at 9). However, Performance only presents arguments and evidence that Picard can be compelled to join arbitration because she benefited from the settlement agreement, which is an estoppel argument. (Doc. 11, at 8-11; Doc. 25, at 5-7). The Court will only consider arguments presented in the briefings and at the hearing.

evidence that [the non-signatory] embraced the Agreement itself during the lifetime of the Agreement, or that it received any *direct* benefit under the Agreement" (emphasis in original)); *see also Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 350 (D.N.J. 2012) (finding "[e]quitable estoppel does not bind a non-party to arbitrate where it only receives an indirect benefit from the contract containing the arbitration clause"). To compel a non-signatory to an arbitration agreement, a signatory must produce evidence that the non-signatory received direct benefits from the agreement or otherwise embraced the agreement by attempting to enforce the agreement. *See Bouriez*, 359 F.3d at 295; *see also Haskins*, 866 F. Supp. 2d at 354.

Performance avers that Picard benefited from the settlement agreement because she received referral fees from the overbilled payments NPSD paid Performance and under the settlement agreement, Picard did not have to return those fees. (Doc. 11, at 11). However, even if the Court assumes as true that Picard profited from Performance overbilling NPSD, Picard's benefit from the overbilling is derived from the agreement between Performance, Picard, and Millenium#25, and not the settlement agreement. (Doc. 28-1). Performance further argued at the hearing that Picard attempted to conceal her profit by asking Houston not to tell NPSD about her referral fees, discouraging NPSD from retaining a thorough auditor, and by encouraging NPSD to collect the overbilled fees from Performance. None of those assertions, even when taken as true, explain how Picard *directly* benefited from the settlement agreement itself.

There is nothing in the settlement agreement which states that NPSD or Performance cannot demand Picard return the referral fees. (Doc. 28-2). In fact, Houston testified during the hearing that Performance began to withhold fees from Picard in an effort to recollect on the referral fees. Picard testified that she was unaware of the terms of the settlement agreement

prior to this litigation, Houston was unable to recall any discussions he had with Picard about the specifics of the settlement agreement, and Powell testified that he never discussed the specifics of the settlement agreement with Picard. Thus, it is unclear how Picard could have directly benefited from an agreement to which she was not a party, the terms of which she did not know, and in which she was not referenced.[3] (Doc. 28-2). Any benefit the settlement agreement provided Picard is indirect at best, and an "indirect benefit does not establish that [Picard] 'embraced' the [settlement] agreement to an extent that equitable estoppel should apply." *Haskins*, 866 F. Supp. 2d at 355. Thus, the Court finds that Picard is likely to succeed on the merits and the first preliminary injunction factor weighs in favor of granting Picard's motion for a preliminary injunction. (Doc. 3).

### 2. Irreparable Injury

Picard next argues that she would suffer irreparable harm if forced to arbitrate her claims with Performance. (Doc. 4, at 17). Performance avers that Picard is already participating in the arbitration and thus would not be harmed by being compelled to join the arbitration. (Doc. 11, at 12-13). Requiring a party to arbitrate a dispute that it has not agreed to arbitrate is *per se* irreparable harm. *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (stating "the harm to a party would be per se irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to

---

[3] Performance also argued at the hearing that Picard benefited from not being terminated for retaining referral fees. However, it is unclear how this is a benefit derived directly from the settlement agreement. The settlement agreement says nothing about NPSD's rights to terminated Picard. (Doc. 28-2). Further, Powell testified at the hearing that Picard was terminated.

compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority."); *see also Needle v. T. Rowe Price Grp. Inc.*, No. CV 21-4786, 2022 WL 900398, at *4 (E.D. Pa. Mar. 28, 2022) (finding irreparable harm weighed in favor of enjoining arbitration where the movant was not a party to the arbitration agreement). Forcing Picard to arbitrate claims for hundreds of thousands of dollars against her when she never agreed to be subject to arbitration is *per se* harm. *See PaineWebber Inc.*, 921 F.2d at 515; see also *Needle*, 2022 WL 900398, at *4. Thus, the second preliminary injunction factor weighs in favor of granting Picard's motion for a preliminary injunction. (Doc. 3).

### 3. Balance of Hardships

As Picard sees it, "[Performance] will not be harmed if temporarily enjoined from arbitrating its claims against [Picard] as it only seeks money damages against [Picard]." (Doc. 4, at 17). Picard submits, "[a] preliminary injunction will not prevent [Performance] from continuing to arbitrate its dispute with NPSD in the NPSD Arbitration. Additionally, [Performance] is permitted to pursue its claims against [Picard] in a court of competent jurisdiction." (Doc. 4, at 17). Performance disagrees, claiming that granting the preliminary injunction would result in greater harm because it would result in double litigation and resource expenditure. (Doc. 11, at 14).

The balance of hardships favors injunctive relief where the movant will be irreparably harmed by denial of the injunction and the nonmovant will only be harmed financially by the imposition of injunctive relief. *See Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987) (finding the balance of harms favors injunctive relief where denying the injunction will cause irreparable environmental harm and granting it will only cause reparable financial harm); *see also Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *20 (M.D. Pa. Jan.

3, 2017) (finding the balance of equities favored the movant where the movant was likely to experience irreparable harm and the nonmovant would only suffer monetary damages). Here, the balance of hardships favors granting the preliminary injunction because the only harm Performance may experience is monetary. (Doc. 11, at 14). Picard, on the other hand, would suffer *per se* irreparable harm if she was wrongly compelled into arbitration. *PaineWebber Inc.*, 921 F.2d at 515; *see also Needle*, 2022 WL 900398, at *4. Thus, the third preliminary injunction factor favors granting Picard's motion for a preliminary injunction. (Doc. 3).

### 4. Public Interest

Picard contends that preventing parties from being compelled into arbitration when they did not agree to it serves the public interest. (Doc. 4, at 17-18). Performance counters it is not in the public interest to require a school district to undergo costly litigation to recover wrongly obtained fees. (Doc. 11, at 15-16). "The right to a jury trial is a fundamental right that is expressly protected by the Seventh Amendment to the United States Constitution." *Bouriez*, 359 F.3d at 294. "In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights." *Council of Alternative Pol. Parties v. Hooks*, 121 F.3d 876, 883–84 (3d Cir. 1997); *see also Scicchitano v. Cnty. of Northumberland*, 112 F. Supp. 3d 293, 307 (M.D. Pa. 2015).

Here, the public interest weighs in favor of granting the preliminary injunction because Picard has a right to a jury trial, and the public does not have an interest in forcing Picard to waive her jury trial rights without her consent to do so. *See Avco Corp. v. Turn & Bank Holdings, LLC*, No. 4:12-CV-01313, 2021 WL 76007, at *2 (M.D. Pa. Jan. 8, 2021) (stating "the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver. Moreover, purported waivers are to be 'scrutinized with the utmost care" (citations and

internal citations omitted)). Because all four preliminary injunction factors favor injunctive relief, the Court **GRANTS** Picard's motion for a preliminary injunction. (Doc. 3).

    B. PICARD'S REQUEST FOR A PERMANENT INJUNCTION

Picard requests the Court grant a permanent injunction because she is entitled to judgment as a matter of law. (Doc. 24, at 10). "Because the scope and procedural posture of a hearing for a preliminary injunction is significantly different from a trial on the merits. . . 'it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.'" *Anderson v. Davila*, 125 F.3d 148, 157 (3d Cir. 1997) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 396, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981)). "[A] district court should not consolidate a hearing for preliminary relief with a trial on the merits unless the court has given both parties 'clear and unambiguous notice' of its intent to do so." *Anderson*, 125 F.3d at 157 (quoting *Univ. of Texas*, 451 U.S. at 396). Even with notice, courts may not convert a preliminary injunction hearing to a trial on the merits unless no further evidence would change the outcome of the proceedings or the parties consent to the hearing being converted to a trial on the merits. *See Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 435 F. Supp. 3d 626, 632 (D.N.J. 2020) (stating that it is inappropriate to equate a preliminary injunction hearing to a trial on the merits where additional evidence may change the outcome of the proceedings); *see Loki Brands, LLC v. Platkin*, No. CV 24-9389, 2024 WL 4457485, at *6 (D.N.J. Oct. 10, 2024) (converting a preliminary injunction hearing into a trial on the merits upon notice and consent of the parties). After ruling on a motion for a preliminary injunction, a court may order the parties to file briefing as to why the prevailing party is not also entitled to judgment as a matter of law. *Yates Real Est., Inc.*, 435 F. Supp. 3d at 634 (explaining that after the court denied a motion for a preliminary junction, the court

ordered parties to submit briefing as to why the defendant was not entitled to judgment as a matter of law).

In this case, the Court ordered the parties conduct limited discovery. (Doc. 15). The parties submitted declarations and affidavits, called witnesses at the September 8, 2025, hearing, and had the opportunity to submit evidentiary exhibits. (Doc. 19-1; Doc. 19-2; Doc. 23-1; Doc. 23-2; Doc. 28; Doc. 28-1; Doc. 28-2; Doc. 29). Picard avers that there is no genuine dispute of material fact in this case and that she is entitled to judgment as a matter of law. (Doc. 24, at 10). The Court asked the parties at trial if there were objections to treating the hearing as a trial on the merits, and Performance objected. Performance suggested at the hearing that it would like to provide evidence of Attorney Dave Nichol's conversations with Picard. Based on Performance's descriptions of these conversations, this evidence would support Performance's contention that Picard attempted to conceal the referral fees she generated from Performance's overbilling. However, as discussed above; to prevail on the merits, Performance must show Picard benefited *directly* from the settlement agreement. *See Bouriez*, 359 F.3d at 295; *see also Haskins*, 866 F. Supp. 2d at 354. Even if the Court assumes as true that Picard benefited from Performance's overbilling and concealed those benefits, the benefits stem from her referral agreement, and not the settlement agreement. (Doc. 28-1). Thus, it is unclear what evidence further discovery could unveil which would allow Performance to succeed on the merits.

Nonetheless, the Court is cognizant of the differences between a preliminary injunction hearing and a final trial on the merits and the long-standing precedent cautioning against conflating the two. *See Univ. of Texas*, 451 U.S. at 396; *see also Anderson*, 125 F.3d at 157; see also *Yates Real Est., Inc.*, 435 F. Supp. 3d at 632. Because of this, the Court will provide

Performance with fourteen days to provide the Court with an explanation of what discovery is needed to determine whether a genuine dispute of material fact exists regarding whether Picard directly benefited from the settlement agreement and why a permanent injunction should not be entered in this case based on the record. Performance must provide the Court with this briefing by October 13, 2025. Picard will then be allowed fourteen days from the date of Performance's filing to respond.

## IV.    CONCLUSION

For the foregoing reasons, Picard's motion for a preliminary injunction is **GRANTED**. (Doc. 3). Further, the Court will consider whether Picard is entitled to judgment as a matter of law. Performance is granted fourteen days to provide the Court with an explanation of what discovery is needed to determine whether a genuine dispute of material fact exists regarding whether Picard directly benefited from the settlement agreement and why a permanent injunction should not be entered in this case based on the record. Performance must provide this briefing to the Court by October 13, 2025. Picard will then be granted fourteen days from the date of Performance's filing to respond.

An appropriate Order follows.


                                                BY THE COURT:


Dated: September 29, 2025                       s/ Karoline Mehalchick
                                                **KAROLINE MEHALCHICK**
                                                **United States District Judge**


16