**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SARA PICARD,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PHOENIX ADMINISTRATORS, LLC,<br><br>　　　　　　Defendant. | CIVIL ACTION NO. 3:24-CV-01940<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Before the Court is Plaintiff Sara Picard's ("Picard") request for a permanent injunction enjoining Defendant Phoenix Administrators, LLC d/b/a Performance Health ("Performance") from joining her into arbitration proceedings against Performance initiated by the North Pocono School District ("NPSD"). (Doc. 24, at 10). For the reasons discussed below, the Court **GRANTS** Picard's request for a permanent injunction.

### I. LEGAL STANDARD

When evaluating a request for a permanent injunction, courts consider whether "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). "There is no significant difference between the standards for a preliminary injunction and a permanent injunction" other than the fact that courts evaluate likelihood of success on the merits when evaluating a preliminary injunction and success on the merits when evaluating a permanent injunction. *Brandt v. Burwell*, 43 F. Supp. 3d 462, 483 (W.D. Pa. 2014).

II. **DISCUSSION**

Picard is the president of and a managing partner at Millenium Administrators, Inc. ("Millenium"), a healthcare brokerage firm and healthcare administrator which advises employers regarding employee health care plans. (Doc. 1, ¶¶ 9-10). In this capacity, Picard advised NPSD. (Doc. 1, ¶ 9; Doc. 19-1, ¶ 4; Doc. 23-2, ¶ 3). Picard referred Performance, a third-party healthcare administrator, to NPSD as a possible candidate to be NPSD's third party healthcare administrator. (Doc. 1, ¶¶ 10-11). NPSD ultimately hired Performance. (Doc. 1, ¶ 11). Unbeknownst to NPSD, after NPSD hired Performance, Picard received a percentage of the payments NPSD made to Performance as a referral fee through another company she founded, Millenium#25, LLC ("Millenium#25"). (Doc. 19-1, ¶ 25; Doc. 23-1. ¶¶ 4-5). In 2022, NPSD discovered Performance substantially overbilled NPSD. (Doc. 1, ¶¶ 13-14; Doc. 19-1, ¶¶ 22-24; Doc. 23-2 ¶ 11). Because of this overbilling, Performance and NPSD entered into a settlement agreement. (Doc. 1, ¶ 15; Doc. 23-2). Picard, Millenium, and Millenium#25 are not parties to the settlement agreement. (Doc. 1, ¶ 16; Doc. 23-2).

The settlement agreement contains an arbitration clause under which NPSD and Performance entered arbitration. (Doc. 1, ¶ 19, 25; Doc. 28-2, at 4-5). Upon Performance's request, the arbitrator ruled that Picard could be forced into the arbitration because Picard benefited from the settlement agreement between Performance and NPSD. (Doc. 1-4). On November 12, 2024, Picard filed a motion for a preliminary injunction seeking to enjoin Performance from joining Picard to the arbitration. (Doc. 1; Doc. 3). The Court directed the parties to conduct limited discovery on the issue of whether Picard benefited from the settlement agreement and after conducting discovery, the parties filed sworn declarations and additional briefing (Doc. 15; Doc. 19-1; Doc. 23-1; Doc. 23-2; Doc. 24; Doc. 25). In its

2

additional briefing, Picard requested the Court grant both a preliminary injunction and a permanent injunction. (Doc. 24, at 10).

On September 9, 2025, this Court held a hearing on Picard's motion for a preliminary injunction in which both parties presented evidence. At the hearing, Performance objected to the Court deciding Picard's request for a permanent injunction because it wanted to reserve its right to conduct additional discovery and have a final trial on the merits. On September 29, 2025, the Court granted Picard's motion for a preliminary injunction and enjoined Performance from joining Picard into the arbitration proceedings. (Doc. 32). The Court found that Picard was likely to succeed on the merits of her argument that she could not be compelled into arbitration under an agreement to which she was not a party and from which she did not directly benefit. (Doc. 34, at 8-11). The Court noted that Performance failed to present evidence that Picard received a direct benefit from the settlement agreement. (Doc. 34, at 8-11).

Long-standing precedent cautions courts against conflating a preliminary injunction hearing with a final trial on the merits. (Doc. 34, at 14-16). As such, the Court granted "Performance with fourteen days to provide the Court with an explanation of what discovery is needed to determine whether a genuine dispute of material fact exists regarding whether Picard directly benefited from the settlement agreement and why a permanent injunction should not be entered in this case based on the record." (Doc. 34, at 15-16). On October 14, 2025, Performance filed a letter advising the Court that Performance "will no longer be pursuing this matter and will not be submitting a brief." (Doc. 35).

A. S<small>UCCESS ON THE</small> M<small>ERITS</small>

This Court previously determined that Picard was likely to succeed on the merits of her claim that she cannot be compelled into arbitration by an agreement she was not a party to and did not directly benefit from. (Doc. 34, at 8-11). "Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001). To compel a non-signatory to an arbitration agreement into arbitration, a signatory must produce evidence that the non-signatory received direct benefits from the agreement or otherwise embraced the agreement by attempting to enforce it. *See Bouriez v. Carnegie Mellon Univ.,* 359 F.3d 292, 295 (3d Cir. 2004).

After the preliminary injunction hearing, the Court determined that Performance failed to present evidence that Picard directly benefited from the settlement agreement. (Doc. 34, at 8-11). The Court further determined that Picard could not be compelled into arbitration unless Performance presents evidence that Picard received a direct benefit from the settlement agreement. (Doc. 34, at 8-11). The Court provided Performance with the opportunity to file a brief explaining whether additional discovery could unveil evidence of a direct benefit. (Doc. 34, at 14-16). Performance declined to file a brief. (Doc. 35). The Court thus finds that Picard cannot be compelled into arbitration under the settlement agreement. Picard succeeds on the merits of her claims and the first permanent injunction factor weighs in favor of granting a permanent injunction.

B. IRREPARABLE INJURY

This Court previously determined that requiring Picard to arbitrate would be *per se* irreparably injury. (Doc. 34, at 11-12). Requiring a party to arbitrate a dispute that she has not agreed to arbitrate is *per se* irreparable harm. See *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990). Because Picard seeks to enjoin Performance from forcing her to arbitrate claims she never agreed to arbitrate, the second permanent injunction factor weighs in favor of granting a permanent injunction.

C. BALANCE OF HARDSHIPS

The Court previously determined that the balance of hardships favors injunctive relief. (Doc. 34, at 12-13). The balance of hardships favors injunctive relief where the movant will be irreparably harmed by denial of the injunction and the nonmovant will only be harmed financially by the imposition of injunctive relief. See *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987); see also *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *20 (M.D. Pa. Jan. 3, 2017). Here, by Performance's own account, a permanent injunction would only harm Performance by requiring it to pay litigation costs. (Doc. 11, at 14). Picard, on the other hand, would suffer *per se* irreparable harm if she was wrongly compelled into arbitration. See *PaineWebber Inc.*, 921 F.2d at 515. Thus, the third permanent injunction factor favors granting a permanent injunction.

D. PUBLIC INTEREST

This Court previously determined that the public interest favors injunctive relief. (Doc. 34, at 13-14). "The right to a jury trial is a fundamental right that is expressly protected by the Seventh Amendment to the United States Constitution." *Bouriez*, 359 F.3d at 294. "In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights." *Council of Alternative Pol. Parties v. Hooks*, 121 F.3d 876, 883–84 (3d

5

Cir. 1997). Here, the public interest weighs in favor of granting a permanent injunction because Picard has a right to a jury trial, and the public does not have an interest in forcing Picard to waive her jury trial rights without her consent. *See Avco Corp. v. Turn & Bank Holdings, LLC*, No. 4:12-CV-01313, 2021 WL 76007, at *2 (M.D. Pa. Jan. 8, 2021).

### III.   CONCLUSION

As all four permanent injunction factors favor injunctive relief, and for the foregoing reasons, Picard's request for a permanent injunction is **GRANTED**. (Doc. 24, at 10). Performance is **ENJOINED** from joining Picard into the arbitration proceedings against Performance initiated by NPSD. The Clerk of Court is directed to enter judgment in favor of Picard and **CLOSE** this case. (Doc. 1).

An appropriate Order will follow.

                                                                 **BY THE COURT:**

**Dated: October 23, 2025**                        *s/ Karoline Mehalchick*
                                                   **KAROLINE MEHALCHICK**
                                                   **United States District Judge**